*Ex parte:*

Enrique Blanco Amigó,
Petitioner

****

ORDER

San Juan, Puerto Rico, April 9, 1969

Request for reconsideration is hereby denied, since it is academic.

It was so agreed by the Court as witnesses the signature of the Chief Justice. Mr. Justice Santana Becerra and Mr. Justice Blanco Lugo delivered separate opinions. Mr. Justice Rigau, Mr. Justice Dávila, Mr. Justice Ramírez Bages, and Mr. Justice Torres Rigual concur in the separate opinion of Mr. Justice Blanco Lugo.

(s) LUIS NEGRÓN FERNÁNDEZ
*Chief Justice*

I attest:

(s) JOAQUÍN BERRÍOS
*Clerk*

—O—

Separate opinion of MR. JUSTICE SANTANA BECERRA, in which MR. JUSTICE HERNÁNDEZ MATOS concurs.

San Juan, Puerto Rico, April 9, 1969

On February 14, 1969, Enrique Blanco Amigó, a citizen of the United States married to a Puerto Rican, filed

873

an application in this Court in order to be admitted to the bar examination to be held in the month of March 1969.

His application was denied by the Court, without expressing its grounds, by Order of March 4, 1969. The Chief Justice and Mr. Justice Hernández Matos stated that they would have approved the application of said petitioner. The subscriber judge was of the opinion that certain additional information should be requested from petitioner, and for said reason, at that time he did not vote either in behalf or against the approval. Mr. Justice Rigau abstained from voting.

On March 11, 1969, the petitioner requested reconsideration. The bar examination was held during March 11, 12, and 13. The examination having been held, I agree that there is nothing to decide as to the reconsideration requested.

I believe, nevertheless, that the circumstances of this case and of similar ones which may arise, require that I set forth certain considerations in relation to a situation which in my opinion warrants that pertinent action be taken.

Petitioner alleged in his request that on February 10, 1960 he received his title of Bachelor in Law (Doctor in Law) issued by the Rector of the University of Havana, Dr. Clemente Inclán, and by the Dean of the Faculty of Law, Dr. Agustín Aguirre. He enclosed with his request a certification of his United States citizenship by naturalization; his title of Doctor in Law issued by the University of Havana on February 10, 1960 duly recorded in the corresponding book of the Ministry of Education; recorded in the Secretaría de Gobierno of the Supreme Court and recorded at the Bar Association of Havana.

He also enclosed a certification of the Rector of the University of Havana dated August 9, 1957, establishing that he had approved 25 of the 32 courses for the title of Doctor in Law; diploma from the Institute of Secondary Teaching of Ciego de Avila, dated May 26, 1953, establishing that he

had obtained his title of Bachelor in Letters (*Bachiller en Letras*), the latter being recorded in the Ministry of Education; document from the Ministry of Justice of the Republic of Cuba dated December 17, 1954, establishing that petitioner had been granted the title of Solicitor, with residence in the Partido Judicial of Havana, authorizing him to exercise said profession freely, and recorded in the corresponding Record of Solicitors; document dated at La Havana on September 30, 1960, issued by the Lawyer's Insurance (*Seguro del Abogado*) establishing that petitioner had been entered in the Registry of Insured.

The application was accompanied by a sworn statement given by petitioner stating that he had the title of Doctor in Law from the University of Havana, school approved by the Supreme Court of Puerto Rico; that in order to obtain said title he attended classes personally during the five years of the course and that he approved all the subjects of which the curriculum in force at that time was composed—32 subjects in 5 years of studies—curriculum which he enclosed with his request. That it was a compulsory requirement to have a Bachelor's degree in Letters in order to enroll in the Faculty of Law of the University of Havana. That this bachelor's degree required five years of studies, four courses for the bachelor's degree and one course of preuniversity education, and he enumerated the 34 subjects included in said program. Petitioner stated that he also attended classes personally during five years in order to approve the 34 subjects of the Bachelor's degree in Letters and preuniversity education. That the University of Havana was closed from 1956 to 1959, and that he completed his course when it was reopened in 1959; that in order to obtain the title of Solicitor it was required by law, among other requirements, to prove having practiced at a lawyer's office for more than two years.

He enclosed a sworn statement given by Dr. Alberto Blanco y Sánchez to the effect that petitioner practiced at his

office for more than two years in order to fulfill the requirements for the title of Solicitor; that he attended personally his classes on civil law, obligations and contracts; that he pursued and approved the 7 subjects which are not included with the certification enclosed; that he graduated as Doctor in Law and he was registered at the Supreme Court of Cuba and at the Bar Association of Havana in order to practice the profession, and that petitioner enjoyed a good reputation in the Cuban courts.

Historically speaking, for me it is not even conceivable to question the academic reputation of the Faculty of Law of the almost three times centenary University of Havana, which has lodged in its professorship renowned jurists and law commentators. There we have, among others, the authority in international law, Dr. Antonio Sánchez de Bustamante, in criminal law, Drs. González Lanuza and Lavedán, in procedural law, Dr. Dolz y Arango, Dr. Dihigo y López de Trigo, Dr. Mariano Aramburu, in civil law, Dr. Del Cueto y Paso and in political law Drs. Orestes Ferrara and Desvernini, among a group of other renowned jurists. José de Diego and Emilio del Toro who was Chief Justice of this Court graduated as lawyers in said faculty.

I understand that as a result of the political happenings that occurred in Cuba as of 1959, there may have been changes in said teaching institution which deserve an evaluation at the present time.

In Puerto Rico the legal profession cannot be practiced if one is not a citizen of the United States.

This and other applications which might come in the future deal with the case of citizens of the United States claiming a right granted by the laws of Puerto Rico, even though they had obtained their titles as lawyers in Cuba.

If there exists any doubt about the academic condition of the University of Havana under the government in force, I am of the opinion that, for the protection of the rights of those

citizens of the United States, the Court should provide the appropriate means so that, whether by means of the agencies of the Judicial Conference, or by any other means available, the academic condition at the present time of the University of Havana in its Law Faculty be studied in order that in the future the disposition of applications for admission to the examination by citizens of the United States graduated as lawyers in Cuba be made upon a rational basis of the facts, and that any denial be consistent with a well-founded opinion of the Court that the Law Faculty which has granted the title does not have the acceptable academic stature in order to admit its graduates to examination.

—O—

Separate opinion of MR. JUSTICE BLANCO LUGO.

San Juan, Puerto Rico, April 9, 1969

Consistent with the position I took when in the past graduates from the University of Havana requested admission to the bar examination—the need of disposing of the elements of judgment which are indispensable for exercising the power of accreditation which we have reserved when the applicant has obtained his degree in a foreign school of law—I have voted against the approval of this application. *In re Cristóbal Díaz Ayala,* 92 P.R.R. 895 (1965).[1] I take a firm stand again as to the convenience of having trustworthy information concerning the requirements for admission and for obtaining the Bachelor's degree in Law, the curriculums of the faculty in comparison with the ones

---

[1] I have sustained the same position when the accreditation of the law schools of Puerto Rico has been involved. As it can be seen in *In re Calderón Lassén,* 88 P.R.R. 913 (1963) and *Ex parte Abréu Delgado,* 90 P.R.R. 887 (1964) my decisions have not been subject to extraneous or subjective factors, but to the evaluation of reports from the former Superior Educational Council, which contained the only trustworthy elements of judgment available in order to make a decision.

required by the law schools of Puerto Rico, the requirement of certain basic courses and any other aspect which may be of help in our evaluation. It would be seriously discriminatory for the graduates from our schools who have to comply with so many requirements that applications of graduates from foreign universities be approved without a verification which, at least, may satisfy equal requirements.[2] The slackness which has characterized the accreditation of graduates from foreign universities has been noticed in the results of the bar examinations.[3]

Finally, in my opinion, it is incumbent upon the petitioner to place us in position to decide on the merits of the University of Havana, although it does not exclude any step which this Court, motu proprio, may deem necessary and proper.

Mr. Justice Rigau, Mr. Justice Dávila, Mr. Justice Ramírez Bages, and Mr. Justice Torres Rigual concur in the expressions comprised in this opinion.

---

[2] Although the academic background is a factor to be considered, it is absolutely unacceptable that this view may prevail in the decision of a matter of such importance, and darken the basic question, a sufficient and minimum capacity *for the exercise of the profession in Puerto Rico.*

[3] Since September 1966 only 3 out of 32 graduates from Spanish universities have deserved approval. These 32 graduates have failed in 86 attempts. From these 32 applicants, 9 have failed in 3 attempts, 4 in 4 attempts, and 4 in 5 attempts.